**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

**GODSON C. UZOR,**

Plaintiff,

v.

**EQUIFAX INFORMATION SERVICES, LLC,**

Defendant.

Civil Action No. ____________

## COMPLAINT AND DEMAND FOR JURY TRIAL

## I. INTRODUCTION

1. This is an action for statutory, actual, and punitive damages arising from Defendant Equifax Information Services, LLC's ("Equifax") systematic and willful violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.

2. Equifax is one of the three largest consumer reporting agencies ("CRAs") in the United States. When a consumer requests a disclosure of his or her own file under 15 U.S.C. § 1681g(a)(1), Equifax is obligated to "clearly and accurately disclose" all information in that file. Equifax has failed that obligation with respect to Plaintiff Godson C. Uzor.

3. The Equifax consumer file disclosure provided to Plaintiff on May 4, 2026 (Confirmation No. 6124579991) contains scores of blank, suppressed, and missing data fields across

multiple accounts. Equifax routinely transmits this same complete underlying data to third-party creditors and lenders while deliberately withholding it from the consumer. This asymmetric practice is not a clerical error; it is a systemic policy that Equifax has maintained for decades despite clear, published notice from the Federal Trade Commission that it violates federal law.

4. Additionally, Equifax's file contains a per se inaccuracy: the High Credit amount for the Comenity Bank/Wayfair account (Account No. *7078) exceeds the stated Credit Limit — an internally contradictory data pair that no reasonable accuracy procedure would permit to be reported.

5. As a direct and proximate result of Equifax's conduct, Plaintiff has suffered actual damages including the inability to identify, evaluate, or dispute the accuracy of the derogatory information maintained in his credit file, denial or restriction of credit opportunities, and the infliction of emotional distress and economic harm. Plaintiff seeks statutory, actual, and punitive damages, together with the costs of this action.

## II. JURISDICTION AND VENUE

6. This Court has federal question jurisdiction pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331 because this action arises under the FCRA, a federal statute.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 15 U.S.C. § 1681p because Plaintiff resides in the Commonwealth of Massachusetts, and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, including Equifax's provision of Plaintiff's incomplete consumer file disclosure to

Plaintiff at his Massachusetts residence and the resulting harm to Plaintiff's credit standing within this District.

## III. PARTIES

8. Plaintiff Godson C. Uzor is a natural person residing in the Commonwealth of Massachusetts. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

9. Defendant Equifax Information Services, LLC is a Georgia limited liability company with its principal place of business at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) and a "nationwide consumer reporting agency" as defined by 15 U.S.C. § 1681a(p). Equifax regularly assembles and evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, including third parties located in Massachusetts.

## IV. FACTUAL ALLEGATIONS

### A. The Equifax File Disclosure

10. On or about May 4, 2026, Plaintiff requested and received a consumer file disclosure from Equifax bearing Confirmation Number 6124579991 (the "May 2026 Disclosure").

The May 2026 Disclosure is the operative document for purposes of this Complaint and is attached hereto as Exhibit A.

11. The May 2026 Disclosure reflects a credit history spanning 12 years and 8 months, with an average account age of 6 years and 9 months. The file discloses the following accounts: (a) Midland Credit Management (Account No. *4106), a debt buyer collection account; (b) Credit One Bank (Account No. *7523), an open revolving credit card; (c) Comenity Bank/Wayfair (Account No. *7078), a closed charge account; (d) USAlliance Federal Credit Union (Account No. *4130), a closed auto loan; and (e) USAlliance Federal Credit Union (Account No. *2324), a closed credit card. The file also reflects a collection account maintained by Fair Collections & Outsourcing (Account No. *7851) for original creditor "The Q," in the amount of $3,923.

12. The May 2026 Disclosure also reflects that Plaintiff's credit file was accessed by multiple third parties during the periods relevant to this action, as reflected in the Inquiries section of Exhibit A.

**B. Equifax's Failure to Clearly and Accurately Disclose All File Information — § 1681g(a)(1)**

13. Section 609(a)(1) of the FCRA, 15 U.S.C. § 1681g(a)(1), requires Equifax to "clearly and accurately disclose" to the consumer, upon request, "[a]ll information in the consumer's file at the time of the request." This obligation extends to every data field maintained in the file — not merely the fields Equifax elects to present. See FTC Advisory Opinion to

Darcy (June 30, 2000) ("Darcy Opinion"), attached hereto as Exhibit B (confirming that § 1681g(a)(1) requires disclosure of all file data clearly and accurately to the consumer).

14. The Darcy Opinion has been publicly available since June 30, 2000 — more than twenty-five years before the conduct at issue here. Equifax has had actual and constructive notice of its obligations under § 1681g(a)(1) for the entirety of that period.

15. The May 2026 Disclosure contains dozens of blank and suppressed data fields across multiple accounts. A complete itemized inventory of blank and missing fields is attached hereto as Exhibit C. The most material omissions are described below.

16. Midland Credit Management, Account No. *4106 ("Midland Account"): Equifax's disclosure reflects this account as a closed Debt Buyer account with a balance and past-due amount of $3,554, opened May 30, 2025, with a Date of First Delinquency of December 21, 2023, and a Date Major Delinquency First Reported of December 5, 2025. The account carries Narrative Code 057 (Collection Account). Despite reporting five months of payment history (December 2025 through April 2026), each month coded as "C" (Collection Account), Equifax has suppressed or omitted the following fields in every row of the 24-Month History table: Scheduled Payment Amount, Actual Payment Amount, Last Payment Date, and Credit Limit. In the account header, the following fields are also blank: Date of Last Activity, Terms Frequency, Scheduled Payment Amount, Actual Payment Amount, Date of Last Payment, Term Duration, Charge Off Amount, Activity Designator, Date Closed, Balloon Payment Amount, Balloon Payment Date, and Deferred Payment Start Date. This constitutes a minimum of twelve (12) blank header fields and twenty (20) blank 24-Month History cells — totaling a minimum of thirty-two (32) suppressed data points for this account alone.

17. Credit One Bank, Account No. *7523 ("Credit One Account"): This open credit card account, opened February 4, 2026, carries Narrative Codes 002 (Credit Card) and 233 (Amount in High Credit Column is Credit Limit). The account has been reviewed for 2 months. In the 24-Month History table, the February 2026 row shows blank fields for Actual Payment Amount and Last Payment Date. The account header also reflects blank fields for Date of First Delinquency, Date Major Delinquency First Reported, Term Duration, Activity Designator, Deferred Payment Start Date, Charge Off Amount, Balloon Payment Amount, Balloon Payment Date, and Date Closed. This constitutes a minimum of eleven (11) blank or missing data fields.

18. Comenity Bank/Wayfair, Account No. *7078 ("Comenity Account"): This closed charge account, opened August 11, 2017, reflects 84 months reviewed. Despite 84 months of account history, Equifax's disclosure presents zero (0) rows of data in the 24-Month History table — a complete suppression of 84 months of historical payment and balance data that Equifax concedes exists (it represents 84 "Months Reviewed"). Additionally, the account header contains the following blank fields: Term Duration, Date of First Delinquency, Date Major Delinquency First Reported, Scheduled Payment Amount, Actual Payment Amount, Amount Past Due, Deferred Payment Start Date, Charge Off Amount, Balloon Payment Amount, and Balloon Payment Date. The suppression of all 24-Month History rows for a 7-year account with an acknowledged 84-month review period constitutes a material withholding of file information.

19. USAlliance Federal Credit Union, Account No. *4130 ("USAlliance Auto Account"): This closed auto loan, opened April 25, 2015, reflects 34 months reviewed. Equifax's disclosure presents no 24-Month History rows and suppresses the following header

fields: Scheduled Payment Amount, Actual Payment Amount, Amount Past Due, Date of First Delinquency, Date Major Delinquency First Reported, Terms Frequency, Deferred Payment Start Date, Charge Off Amount, Balloon Payment Amount, and Balloon Payment Date. This constitutes a minimum of ten (10) blank header fields and complete suppression of historical data.

20. USAlliance Federal Credit Union, Account No. *2324 ("USAlliance Credit Card Account"): This closed credit card, opened September 5, 2013, reflects 39 months reviewed. Equifax's disclosure presents no 24-Month History rows and suppresses the following header fields: Scheduled Payment Amount, Actual Payment Amount, Amount Past Due, Date of First Delinquency, Date Major Delinquency First Reported, Terms Frequency, Term Duration, Deferred Payment Start Date, Charge Off Amount, Balloon Payment Amount, and Balloon Payment Date. This constitutes a minimum of eleven (11) blank header fields.

21. In aggregate, the May 2026 Disclosure contains in excess of eighty (80) blank, suppressed, or missing data fields across Plaintiff's five credit accounts. These omissions are not random — they follow the same pattern across every account in Plaintiff's file, reflecting a uniform, systemic suppression policy rather than isolated data gaps.

22. On information and belief, every consumer who requests a file disclosure from Equifax through the consumer portal receives the same categories of suppressed fields identified above. Equifax maintains and transmits the complete underlying data to third-party creditors, lenders, and users of consumer reports, but withholds that same data from the consumer to whom the file belongs. This practice is the direct inverse of what § 1681g(a)(1) requires.

23. Because Equifax has suppressed Actual Payment Amount data for every month with a derogatory notation on the Midland Account, and has suppressed all historical payment data for the Comenity Account and both USAlliance accounts, Plaintiff is unable to evaluate the accuracy of the derogatory notations, identify whether the payment history contains errors, or formulate a meaningful dispute. The disclosure is not merely incomplete — it is affirmatively misleading in that it presents derogatory notations without the underlying payment data that would allow the consumer to verify or challenge them.

**C. Per Se Inaccuracy — Comenity Account (High Credit Exceeds Credit Limit)**

24. The Comenity Bank/Wayfair Account No. *7078 discloses a Credit Limit of $1,600 and a High Credit of $1,778. A High Credit figure that exceeds the stated Credit Limit is an internally contradictory data pair: the highest balance ever carried on a revolving account cannot logically exceed the account's credit ceiling unless the account lacked a defined limit or the figures are being reported inaccurately.

25. This inaccuracy is per se: no reasonable accuracy procedure would permit a consumer report to disclose a High Credit of $1,778 against a Credit Limit of $1,600 without either correcting one of the two figures or providing an explanation. See Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1163 (9th Cir. 2009) (information that is technically present but misleading in context violates § 1681e(b)).

26. Any third-party user reviewing this account — a prospective creditor, landlord, or employer — would reasonably interpret a High Credit exceeding the Credit Limit as

evidence of overlimit borrowing or account mismanagement, even though the account has a zero balance and is designated "Pays As Agreed." The inaccuracy therefore has concrete reputational and credit-access consequences for Plaintiff.

**D. Dissemination to Third Parties — Standing Under TransUnion LLC v. Ramirez**

27. The Inquiries section of the May 2026 Disclosure reflects that Plaintiff's credit file was accessed by multiple third parties on numerous occasions before and during the period in which the inaccuracies described herein were present in Plaintiff's file. These accesses include inquiries by PayPal, Inc. (November 15, 2025; December 17, 2025; February 20, 2026), Capital One Auto Finance (February 24, 2026), Digital Federal Credit Union (January 19, 2025), Upstart Network, Inc. (November 24, 2025), and Fast Debt LLC (November 24, 2025), among others.

28. Each instance in which Equifax furnished a consumer report containing the inaccuracies described herein to a third party constitutes a separate dissemination and a separate injury to Plaintiff. See TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2208-09 (2021) (holding that dissemination of inaccurate credit information to third parties establishes concrete injury-in-fact sufficient for Article III standing).

29. Because the per se inaccuracy on the Comenity Account — High Credit exceeding Credit Limit — was present in Plaintiff's file throughout the period of third-party accesses reflected in the Inquiries section, each such access represents a separate statutory violation and a separate concrete harm to Plaintiff's credit reputation and economic standing.

**E. Willfulness — Equifax's Conduct Was Objectively Unreasonable**

30. Equifax's violations of §§ 1681g(a)(1) and 1681e(b) were willful within the meaning of 15 U.S.C. § 1681n and Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 57-58 (2007). Under Safeco, willfulness encompasses not only knowing violations but also reckless disregard of the FCRA's requirements — conduct that is "objectively unreasonable" and that runs "a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."

31. First, the FTC Advisory Opinion to Darcy (June 30, 2000) constitutes direct, published agency guidance that § 1681g(a)(1) requires CRAs to clearly and accurately disclose all file information to the consumer upon request. That opinion has been publicly available for over twenty-five (25) years. Any reasonable CRA operating in compliance with the FCRA would have reviewed, understood, and implemented this guidance. Equifax's continued suppression of file data in consumer disclosures — while providing that same data to third-party users — is objectively unreasonable in light of twenty-five years of clear regulatory notice.

32. Second, the uniform pattern of identical omissions across all five of Plaintiff's accounts — every account missing Actual Payment Amount, Scheduled Payment Amount, and historical balance data in the same fields — confirms that this is a deliberate systemic policy, not a random data error. A random malfunction does not produce identical suppressions across accounts of different types (auto loan, credit card, debt buyer, charge

account), different ages, and different furnishers. This pattern of uniformity is direct evidence of deliberate design.

33. Third, with respect to the per se inaccuracy on the Comenity Account, Equifax's system published a High Credit figure of $1,778 against a Credit Limit of $1,600 — a mathematical impossibility that a basic data validation check would have flagged. No system designed with reasonable accuracy procedures would permit this contradiction to pass to a consumer-facing disclosure. The failure to catch an internally contradictory data pair reflects either the absence of basic quality controls or deliberate indifference to their absence.

34. For these reasons, Equifax's conduct satisfies the Safeco willfulness standard: its practices were objectively unreasonable in light of the FCRA's clear statutory text, the Darcy Advisory Opinion's explicit guidance, and the systemic and mathematically impossible nature of the errors themselves.

**F. Damages**

35. As a direct and proximate result of Equifax's violations, Plaintiff has suffered the following actual damages: (a) inability to review, evaluate, and dispute the accuracy of derogatory account information in Plaintiff's file, including the Midland Credit Management collection account reporting $3,554 in past-due debt; (b) inability to verify the accuracy of payment histories on closed accounts, which negatively affect Plaintiff's creditworthiness evaluations; (c) reputational harm caused by dissemination of the Comenity Account per se inaccuracy (High Credit $1,778 / Credit Limit $1,600) to third-

party users of Plaintiff's credit file; (d) loss of credit opportunities and/or adverse credit terms flowing from the continued presence of inaccurate and incomplete information in Plaintiff's file; and (e) emotional distress, anxiety, and lost time in attempting to understand and address the incomplete file disclosure.

36. In addition to actual damages, Equifax's willful conduct renders it liable for statutory damages of not less than $100 and not more than $1,000 per violation under 15 U.S.C. § 1681n(a)(1)(A), punitive damages under 15 U.S.C. § 1681n(a)(2), and costs of the action under 15 U.S.C. § 1681n(a)(3).

## V. CAUSES OF ACTION

### COUNT I

### VIOLATION OF 15 U.S.C. § 1681g(a)(1) — FAILURE TO CLEARLY AND ACCURATELY DISCLOSE ALL FILE INFORMATION

37. Plaintiff restates and incorporates paragraphs 1 through 36 as if fully set forth herein.

38. Section 609(a)(1) of the FCRA, 15 U.S.C. § 1681g(a)(1), requires Equifax, upon the request of a consumer, to "clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request."

39. The FTC Advisory Opinion to Darcy (June 30, 2000), attached as Exhibit B, confirms that this provision requires disclosure of all information held in the consumer's file, including data ordinarily transmitted to third-party users but withheld from the consumer.

40. Equifax violated § 1681g(a)(1) by providing Plaintiff with a May 2026 Disclosure containing in excess of eighty (80) blank, suppressed, or missing data fields across five accounts, as detailed in paragraphs 16 through 22 above and itemized in Exhibit C.

41. Specifically, Equifax suppressed the Actual Payment Amount for all five months of 24-Month History data on the Midland Account (Account No. *4106), the account carrying the highest derogatory weighting in Plaintiff's file. Suppression of Actual Payment Amount data in months where a derogatory notation exists deprives Plaintiff of the only data point that would allow him to verify whether the payment was missed, partial, or incorrectly coded.

42. Equifax further withheld all 24-Month History rows for the Comenity Account (Account No. *7078), despite acknowledging 84 months of reviewed account history, and all historical rows for the USAlliance Auto Account (Account No. *4130) and USAlliance Credit Card Account (Account No. *2324).

43. This practice is systemic, uniform, and known to Equifax. On information and belief, Equifax maintains these suppressed data fields in its internal databases and transmits the complete data to third-party creditors and lenders, while providing a truncated and incomplete version to the consumer. This asymmetric disclosure is not permitted by § 1681g(a)(1).

44. Equifax's violation was willful within the meaning of 15 U.S.C. § 1681n and Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57-58 (2007), for the reasons stated in paragraphs 30 through 34 above.

45. As a result of Equifax's willful violation of § 1681g(a)(1), Plaintiff is entitled to: (a) actual damages in an amount to be determined at trial; (b) statutory damages of not less

than $100 and not more than $1,000 per willful violation; (c) punitive damages; and (d) costs of the action pursuant to 15 U.S.C. § 1681n(a).

## COUNT II

## VIOLATION OF 15 U.S.C. § 1681e(b) — FAILURE TO FOLLOW REASONABLE PROCEDURES TO ASSURE MAXIMUM POSSIBLE ACCURACY (COMENITY ACCOUNT — HIGH CREDIT EXCEEDS CREDIT LIMIT)

46. Plaintiff restates and incorporates paragraphs 1 through 36 as if fully set forth herein.

47. Section 607(b) of the FCRA, 15 U.S.C. § 1681e(b), requires that whenever a CRA prepares a consumer report, it shall "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

48. Equifax's file for Plaintiff contains a per se inaccuracy in the reporting of the Comenity Bank/Wayfair Account No. *7078: the account discloses a High Credit of $1,778 against a stated Credit Limit of $1,600. A High Credit — defined as the highest balance ever carried on the account — cannot logically exceed the Credit Limit unless the credit limit was either unlimited, incorrectly reported, or subsequently reduced below the historical high balance. Equifax has provided no explanation for this contradiction.

49. Any consumer report furnished to a third-party creditor or user containing this internally contradictory data pair is inaccurate within the meaning of § 1681e(b). See Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1163 (9th Cir. 2009) (holding that

information that, while technically present, creates a materially misleading impression of the consumer's creditworthiness violates § 1681e(b)).

50. A basic data integrity validation routine — checking whether High Credit exceeds Credit Limit — would have detected and flagged this contradiction before it was incorporated into Plaintiff's consumer file. Equifax's failure to implement such a routine, or its failure to act on the results if such a routine exists, constitutes a failure to follow reasonable accuracy procedures.

51. This per se inaccuracy was present in Plaintiff's file and was therefore incorporated into consumer reports furnished to third parties during the period of accesses reflected in the Inquiries section of the May 2026 Disclosure, including but not limited to accesses by PayPal, Inc. (November 15, 2025; December 17, 2025; February 20, 2026), Capital One Auto Finance (February 24, 2026), Digital Federal Credit Union (January 19, 2025), Upstart Network, Inc. (November 24, 2025), and Fast Debt LLC (November 24, 2025). Each such dissemination constitutes a separate violation and a separate concrete injury under TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021).

52. Equifax's violation of § 1681e(b) was willful within the meaning of 15 U.S.C. § 1681n and Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007). The internally contradictory nature of the Comenity Account data — a mathematical impossibility that is facially visible on the face of the disclosure — demonstrates that Equifax's quality control procedures were either absent or deliberately disregarded. This is objectively unreasonable conduct that ran a risk of harming consumers substantially greater than mere carelessness.

53. As a result of Equifax's willful violation of § 1681e(b), Plaintiff is entitled to: (a) actual damages in an amount to be determined at trial; (b) statutory damages of not less than $100 and not more than $1,000 per willful violation, with each third-party dissemination constituting a separate violation; (c) punitive damages; and (d) costs of the action pursuant to 15 U.S.C. § 1681n(a).

## VI. DAMAGES

54. Plaintiff demands the following relief:

55. Actual damages under 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1), in an amount to be determined at trial, for the harms described in paragraph 35 above, including but not limited to: denial and impairment of credit opportunities; adverse credit terms; reputational harm resulting from dissemination of inaccurate data to third parties; emotional distress; and time and effort expended in attempting to understand and redress the incomplete and inaccurate disclosure.

56. Statutory damages under 15 U.S.C. § 1681n(a)(1)(A) of not less than $100 and not more than $1,000 per willful violation.

57. Punitive damages under 15 U.S.C. § 1681n(a)(2) in an amount sufficient to deter Equifax from continuing the systematic practices described herein.

58. Costs of the action pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2).

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Godson C. Uzor respectfully prays that this Court:

A. Enter judgment in Plaintiff's favor on all Counts;

B. Award Plaintiff actual damages in an amount to be determined at trial;

C. Award Plaintiff statutory damages of not less than $100 and not more than $1,000 per willful violation under 15 U.S.C. § 1681n(a)(1)(A);

D. Award Plaintiff punitive damages under 15 U.S.C. § 1681n(a)(2) in an amount sufficient to punish Equifax and deter future violations;

E. Award Plaintiff the costs of this action under 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F. Grant such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Godson C. Uzor hereby demands a trial by jury on all issues triable of right by a jury.

Dated: June __1_, 2026

Respectfully submitted,

Godson Uzor

GODSON C. UZOR

Goodee2001@icloud.com

4 Crown drive, unit 321, Quincy, MA 02169